RODGERS, administrator, *v.* MOORE.

1. Where an attorney was employed to procure a bond for one charged with a criminal offence, and did so, taking from the person so charged a deed to indemnify him against loss on account of said bond, and afterwards the defendant in such criminal case borrowed money from another to settle the same, and the attorney, at the request of the defendant, quit-claimed the property to the lender as a security for such money: *Held*, that in a controversy as to the title of the land between the estate of the lender and that of the defendant in the criminal case, both being dead, such attorney was a competent witness to prove the above recited facts, and also an admission by the lender that the money he advanced upon such quit-claim deed had all been repaid.
2. When the question at issue is whether a deed was made as an absolute conveyance of property, or simply as a security for money advanced to the maker, evidence of the value of the property at the time the deed was made is pertinent and material.
3. None of the questions made in the bill of exceptions furnish any cause for reversing the judgment.

November 23, 1891.

Attorney and client. Witness. Evidence. Title. Admission. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1891.

Reported in the decision.

ROBERT L. RODGERS, for plaintiff.

SPEAIRS & ROAN and ROSSER & CARTER, for defendant.

SIMMONS, Justice.

Rodgers, as administrator of Beck, brought complaint for land against Sarah Moore. The title he relied on was a deed from Giles and Sarah Moore to Daniel, and a deed from Daniel to Beck. It seems that Giles Moore was charged with some criminal offence and placed in jail, and that he sent for Daniel, an attorney, and procured him to have a bond made for his (Moore's) appearance at court, so that he might be discharged from jail until his trial. Daniel got up the bond, and Moore, to secure Daniel, made him a deed to the land in dispute. Moore subsequently settled the criminal case by paying $110. He borrowed this money from Beck, and requested Daniel to make a deed to the land to Beck to secure him in the payment of the money borrowed. Daniel was not Moore's attorney except in procuring his appearance bond. He was not his attorney in the settlement of the case, nor when Moore borrowed the money from Beck, nor when the deed was made to Beck at Moore's request. Beck afterwards told Daniel that Moore had paid him the money borrowed. Moore and Beck both died before the commencement of this action. When Daniel was placed upon the stand by the defendant and asked about the deed he had made to Beck, the plaintiff objected on the ground that Beck was dead, and that the witness was attorney for Giles Moore. The court overruled the objection and allowed the witness to testify, and to this the plaintiff excepted.

1. We know of no reason which rendered Daniel incompetent to testify as to the matters inquired about. The plaintiff relied upon the deed from Moore to Daniel and the deed from Daniel to Beck, to recover the land. The defendant set up that the deed from Daniel to Beck was given to secure a loan which Beck had made to Moore, and that the loan had been repaid by Moore. Daniel was never the attorney of Beck, nor was he at-

torney for Moore except to procure a bond. After the bond was procured, his relationship to Moore as attorney ceased. After it ceased, Moore borrowed the money from Beck and requested Daniel to make Beck a quit-claim deed to the land to secure Beck for the money borrowed. The bond procured by Daniel for Moore had served its purpose and he was discharged from jail. Moore had settled the criminal case and had borrowed the money from Beck to make the settlement, and in these transactions Daniel was not his attorney or agent in any manner. There was no reason why Daniel would be incompetent to testify as to the transaction between Moore and Beck. He had no interest in the matter, and was not at that time the agent or attorney of either of them. Nor was there any reason why he should not testify to the admissions of Beck that Moore had paid him the money. He would not have been incompetent under the evidence act of 1866, nor was he under the amendatory act of 1889.

2. Sarah Moore, the defendant, had filed a plea that the deed was made to secure a loan from Beck to Moore, and the loan had been paid off. The consideration expressed in the deed was $110. When the plaintiff was testifying as a witness, the defendant's counsel asked him the value of the land; to which he objected. The court overruled the objection and compelled the plaintiff to testify as to its value. He testified that it was worth between $400 and $500, or may be $500 or $600. The question at issue being whether the deed was an absolute conveyance or simply a security for money advanced to the maker, evidence of the value of the property at the time the deed was made was pertinent and material. Evidence that at the time the deed was made the property was worth $500 or $600, the consideration of the deed being only $110, was strong proof to sustain the defendant's plea, and the court was right in overruling the objection.

3. There are other questions made in the bill of exceptions, but none of them furnish any cause for reversing the judgment.                    *Judgment affirmed.*